# UNITED STATES DISTRICT COURT

# DISTRICT OF SOUTH CAROLINA

# COLUMBIA DIVISION

| | | |
|---|---|---|
| Yvette Scott, individually and as Personal Representative of the Estate of Raymond Angelo Scott, | ) ) ) ) | C/A No: |
| Plaintiff, | ) ) | COMPLAINT (42 U.S.C. § 1983) |
| vs. | ) ) | (Jury Trial Demanded) |
| Dennis Patterson, Joseph Stines, Edward Tisdale, Jr., Kenneth Sharp, Annie McCullough, Sam Ray, Arenda Thomas, Cynthia Petty, Michael Beedy, Raymond Johnson, Elsie Pressley, Niccole Sheppard, Colonda Robinson, Emily Anderson, Linda Haynesworth, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff named herein, complaining of Defendants herein, would respectfully show unto this Honorable Court and allege as follows:

## JURISDICTION

1.    This is an action for money damages brought pursuant to 42 U.S.C.A. §§ 1983, et seq., and the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution, and under the common law, the statutory law, and the Constitution of the State of South Carolina, against the Defendants.

2.    Subject matter jurisdiction is conferred upon the Court by 28 U.S.C.A. §§ 1331, 1367 (a), (b), (c), (d), and 1343, and 28 U.S.C.A. §§ 2201 and 2202.

## PARTIES

3.      The Plaintiff, Yvette Scott, is a citizen and resident of the County of Charleston, State of South Carolina. Additionally, Yvette Scott is the duly appointed Personal Representative of the Estate of Raymond Angelo Scott by Order of the Charleston County Probate Court dated July 12, 2018 under case number 2018ES1001253.

4.      This suit is filed on behalf of the heirs of Raymond Angelo Scott.

5.      At all times mentioned in the Complaint, the Defendants Dennis Patterson (Assistant Deputy Director of Operations), Joseph Stines (Director of Special Projects – Operations), Edward Tisdale, Jr. (Assistant Warden), Kenneth Sharp (Assistant Warden), Annie McCullough (Captain), Sam Ray (Major), Arenda Thomas (Captain), Cynthia Petty (Lieutenant), Michael Beedy (Lieutenant), Raymond Johnson (Lieutenant), Elsie Pressley (Sergeant), and Niccole Sheppard (Sergeant) were supervisors, administrators, and/or employees of the South Carolina Department of Corrections (SCDC) who supervised others at the Lee Correctional Institution (LCI). At all relevant times hereinafter mentioned, these Defendants were acting individually as employees and/or administrators of the Lee Correctional Institution. For purposes of claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity, under the color of state law. Upon information and belief, these Defendants either had direct contact with the decedent, had direct knowledge of the unsafe conditions present during the time period in question, had direct knowledge of the excessive risk of serious harm to the decedent's health or safety, or supervised other Defendants who had direct contact with the decedent or had knowledge of the above.

During the time period in question, the Plaintiff/decedent's Constitutional rights were well established and well known to each of the Defendants listed above, including and not

2

limited to, the decedent's right to due process, right to be free from danger, including but not limited to violence at the hands of other prisoners, and right to be free from cruel and unusual punishment. Additionally, these Defendants had actual and/or constructive knowledge that their subordinates were engaged in conduct that posed a pervasive and unreasonable risk of Constitutional injury to the decedent. Further, the response of these Defendants to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the offenses by them as alleged herein; and there was a causal link between their actions and/or inactions and the Constitutional injury suffered by the Plaintiff.

6. Upon information and belief (during the time period set out below) Defendants Colonda Robinson, Emily Anderson and Linda Haynesworth, at all times relevant herein, were acting individually as agents, servants, and/or employees of SCDC working at the Lee Correctional Institution. For purposes of the claims asserted under 42 U.S.C. § 1983, these Defendants are being sued in their individual capacity under the Color of State Law

Upon information and belief (during the time periods set out below), these Defendants were Correctional Officers who had direct contact with the decedent and had direct knowledge of the substantial risk to the decedent's safety and health. Prior to his death, these Defendants had the obligation and opportunity to protect the decedent from physical harm. Additionally, during the time period in question, the decedent's constitutional rights were well established and well known to the Defendants listed above. This would include, and not be limited to, the decedent's right to due process, right to be free from danger and right to be free from cruel and unusual punishment. These Defendants were deliberately indifferent to the safety of the decedent by knowingly exposing the decedent to a substantial risk to his physical safety. A more detailed

description of their contact with the decedent and knowledge of the substantial risks are set out below.

7.    The allegations set forth in this Complaint occurred in Lee County; therefore, venue is proper in this District.

## FACTS

8.    Prison officials have a federal constitutional duty (under the 8th Amendment) to protect inmates from violence at the hands of other prisoners. In this case the Plaintiff is informed and believes that (a) all Defendants knew that the decedent was exposed to a substantial risk of serious harm to his physical safety; (b) the Defendants consciously failed to take reasonable measures to abate the risk; and (c) the decedent suffered serious injuries and death as a direct result thereof.

9.    Prison correctional staff and officials have a federal constitutional duty (under the 4th and 14th Amendments) to ensure inmates do not endure cruel and unusual punishment, and receive due process prior to being punished. In this case all Defendants consciously failed to ensure that the decedent did not endure cruel and unusual punishment and they failed to ensure that he received due process prior to being punished and receiving a death sentence.

10.    Prior to April 2018, Raymond Scott (the decedent) was placed in the care and custody of the Lee Correctional Institution, where he remained until his death on April 15, 2018. Prior to and on the date of his death the decedent was housed in the F5 unit in cell 256-T.

11.    Prior to the events in question, Lee Correctional Institution (as a level (3) three Correctional Institute) had a long history of overcrowding and failing to provide adequate security and supervision over the inmates located at the facility – to include those inmates located within the F5 Unit. This was well known to all the Defendants.

12.     Specifically, just prior to and during the time period in question, the Defendants Dennis Patterson, Joseph Stines, Edward Tisdale, Jr., Kenneth Sharp, Annie McCullough, Sam Ray, Arenda Thomas, Cynthia Petty, Michael Beedy, Raymond Johnson, Elsie Pressley, and Niccole Sheppard failed to ensure that the adequate and/or specific number of properly trained security guards were located in the F5 Unit. Further, the Defendants knew or should have known that their failure to provide adequate security measures would result in unsafe conditions for the inmate population, to include those located in the F5 Unit.

13.     Further, all Defendants were well aware of the existence of competing gangs as well as the potential for violent outbreaks within the inmate population at Lee Correctional Institution and in particular the F5 Unit. Additionally, all Defendants were well aware that the F5 Unit housed the most violent offenders as well as the inmates with chronic disciplinary charges and reprimands.

14.     During the time period in question, approximately 240 inmates were typically housed in the F5 Unit. Further, two (2) correctional officers were required to be assigned to this Unit to monitor and supervise the inmate patients 24 hours a day. However, due to extremely deficient staffing levels and other failures, the Defendants Dennis Patterson, Joseph Stines, Edward Tisdale, Jr., Kenneth Sharp, Annie McCullough, Sam Ray, Arenda Thomas, Cynthia Petty, Michael Beedy, Raymond Johnson, Elsie Pressley, and Niccole Sheppard were well aware that there would normally only be one (1) correctional officer assigned to the entire unit. The Plaintiff is further informed and believes that correctional staff are seldom located within the unit and the inmates are largely left unsupervised throughout the day and night. Considering this is a level (3) institution (which houses the most violent inmate population) this routinely exposed the decedent to cruel and unusual punishment, violent and dangerous living conditions.

5

15.     The Plaintiff is informed and believes that SCDC policy and procedure required that inmates be housed according to certain classifications. Specifically, violent offenders were not to be housed with non-violent offenders. However, during the time period in question, inmates housed within the F-5 Unit were not separated by the required classification system. Instead, during this time period inmates with known history of violent offenses and gang relations were allowed to be housed with nonviolent offenders in the F-5 unit without the appropriate supervision and monitoring. This was well known to all the Defendants and exposed the decedent to dangerous living conditions, violence and cruel and unusual punishment.

16.     Prior to the incident in question, it was well known to all Defendants that a large percentage of the inmate population carried and/or had access to weapons, including shanks, to inflict physical harm. This was especially true in the F5 Unit. Despite this knowledge, the Defendants failed to take any actions to limit contraband including shanks. Further, the Defendants knew of and disregarded the excessive risk to inmate safety by failing to take actions to remove the contraband that resulted in the incident outlined below.

17.     Additionally, prior to and during the time period in question, SCDC policy and procedure required correctional officers to perform cell/security checks at least once every thirty (30) minutes on all inmates in every unit (including F5). This required the correctional officer to actually see and confirm each inmate located within the F5 unit during these security checks were alive and well, as well as verifying the inmates were in the correct location. Prior to and during the time period in question, this was not being performed in conscious violation of the SCDC policy and procedure. This was well known to all Defendants and exposed the decedent to dangerous living conditions, violence and cruel and unusual treatment.

18.     Additionally, prior to and during the time period in question, SCDC policy and procedure required that the unit doors, sally-port doors and cell doors be locked at designated times throughout the day and night. Prior to and during the time period in question this was typically not done in conscious violation of the SCDC policy and procedure. Additionally, the Plaintiff is informed and believes that a majority of the doors in the F5 Unit (to include individual cell doors, as well as the front door leading into the unit) were broken and could not be secured. This created an extremely dangerous condition that all Defendants were well aware of and completely disregarded. Further, the Plaintiff is informed and believes that the Defendants made no attempt to repair or ensure the cell doors were repaired prior to the incidents in question.

19.     A facility-wide inmate count is to take place around the time of shift-change at 7:00am and 7:00pm – at which time all inmates are supposed to be identified and secured within their assigned cells. On the date in question, these policies were being consciously violated by all Defendants – to include Annie McCullough, Arenda Thomas, Cynthia Petty, Michael Beedy, Raymond Johnson, Elsie Pressley, Niccole Sheppard, Colonda Robinson, Emily Anderson, Linda Haynesworth. Prior to and during the rime period in question a large percentage of the inmate population were not located in their assigned unit, wing and/or cell. This was well known to all of the Defendants and created an extremely dangerous condition.

20.     During the time period in question, SCDC policy and procedure required that the correctional officers (to include and not be limited to Defendants Colonda Robinson and Emily Anderson) working the housing units (such as the F-5 Unit) be properly trained to recognize and provide emergency medical care to inmates who required such care. Even though they had the training and knowledge, they consciously failed to secure lifesaving medical care for the

decedent, after being violently attacked and stabbed. Because of these conscious failures, the decedent was allowed to die from the wounds and excessive bleeding.

21.    The Plaintiff is informed and believes that prior to the incidents in question, known dangerously violent and "unruly" prisoners were transferred from McCormick Correctional Institution into Lee Correctional Institution with the full knowledge of Defendants, to include Patterson and Stines. In fact, the Plaintiff is informed and believes that Aaron Joyner (the Warden of Lee Correctional Institution during the time period in question) informed Defendants Patterson and Stines that the transfer of these violent inmates into his facility (with limited staff) would result in dire consequences. However, despite knowledge of facts that substantial risk of harm existed, the Defendants failed to take any measures or precautions to prevent harm.

22.    Additionally, the Plaintiff is informed and believes that several months prior to the incidents in question SCDC administrators and supervisors (to include and not be limited to Defendants Dennis Patterson, Joseph Stines, Edward Tisdale, Jr., Kenneth Sharp, Annie McCullough, Sam Ray, Arenda Thomas, Cynthia Petty, Michael Beedy, Raymond Johnson, Elsie Pressley, and Niccole Sheppard) began receiving reports that inmates were pushing the cell doors off of their tracks in the F5 Unit of Lee Correctional Institution. This allowed inmates to move about and exit the wing and unit whenever they wanted. This created an extremely dangerous condition that was well known to all Defendants. However, the Defendants consciously failed to take any action/measures to correct the situation to prevent likely harm.

23.    Prior to the events in question, the Plaintiff is informed and believes that all Defendants were made aware that a "contract" and/or "hit" had been taken out on the decedent – who was well known to all at Lee Correctional Institution as a peace keeper and a model inmate.

However, instead of taking immediate lifesaving action to protect the decedent from this known threat of harm or death, the Defendants consciously failed to take any action to include protective custody or transferring the decedent to another facility. Had the appropriate action been taken, the decedent would not have been forced to suffer (both mentally and physically) and the die.

24.     The Plaintiff is informed and believes that on or about the evening of April 14, 2018 the Defendants became aware that there was unrest among the inmates housed within the F3 and F5 Units. Specifically, Defendant Pressley reported to her supervisor Defendant Johnson that several of the inmates within these Units had sabotaged their electrical outlets which made the lights go off within their cells and would not allow Defendant Pressley to lock/secure their cell doors. However, instead of addressing these issues, Defendant Pressley was told by Defendant Johnson to abandon her post, leaving the unit completely unsupervised with doors unlocked. This created an extremely dangerous situation.

25.     The Plaintiff is informed and believes that this unrest continued to simmer and be unchecked throughout the following day until approximately 7:15pm on April 15, 2018. At this time inmates within the F3 Unit began fighting.  At this time the only staff in the F3 Unit were two (2) female correctional officers (one whose shift was ending and one who had just arrived). At no time did any of the Defendants attempt to gain control of the Unit and/or to de-escalate the situation. The female officers were eventually "rescued" and the outer doors to the F3 Unit were locked. These actions left the inmates alone and unsupervised, creating a situation where none of the wounded inmates could seek medical aid. At this time the Plaintiff is informed and believes that Defendant McCullough ordered Defendants Pressley and Petty away from F3 to go look for an unknown inmate that was thought to be on the yard. While Defendants Pressley and Petty were wasting time looking for this unknown inmate, the situation in F3 spread to the F5 Unit.

26.     The Plaintiff is informed and believes that while the violent situation in the F3 Unit continued to escalate, the inmates in F5 were allowed to wander and loiter unchecked (by Defendant Anderson) both inside from pod to pod and outside the Unit's broken front door. In fact, Defendant Anderson documents in her logbook that for approximately 90 minutes the inmates within F5 were walking around from pod to pod and standing outside of the Unit. At approximately 9:00pm, Defendant Anderson called for first responders to the D-pod of F5 because of fighting inmates and the fact that she could see numerous hatchets and knives. It is during this time that the Plaintiff is informed and believes that the decedent was violently attacked (without justification or cause) by several inmates who were improperly allowed to enter the area with shanks and other weapons. At this time Defendant Anderson (who was located within the Control Room of the F5 Unit) sat and watched as the violence unfolded, taking no action to intervene or render aid to the inmates who had been attacked and stabbed. Many of the inmates in the F5 Unit eventually exited the broken front unit door. After these actions occurred the correctional staff (including all Defendants) could no longer provide any assistance and were forced to leave the yard. At this time, all inmates (injured and non-injured) were locked into the yard by themselves and unsupervised.

27.     At approximately 10:30pm on April 15, 2018, Defendant Anderson documented that several inmates had informed her that there were (4) to (5) bodies laying out in front of the F5 Unit. However, it wasn't until approximately 12:51am on April 16, 2018, that SCDC staff began trying to regain control of F5. Thereafter, Defendant Anderson does not document that F5 was secured until approximately 3:10am on April 16, 2018. It is during this time period that the Plaintiff is informed and believes that the decedent was allowed to die from the numerous stab wounds and excessive bleeding.

28.    As a direct and proximate result of the actions and/or omissions on the part of the Defendants in being deliberately indifferent to the basic safety and health needs of the decedent (which included and was not limited to ensuring his health and safety), when they were clearly informed and had actual notice of the death threat against the decedent, as well as the obviously dangerous environment which was created by the lack of security personnel, safety measures, and basic maintenance repairs, Raymond Scott suffered both mentally and physically and then unnecessarily died on April 15, 2018.

29.    Additionally, the Defendants had a Federal Constitutional duty to protect inmates from violence at the hands of other persons when they knew or should have known that certain unsafe conditions presented a substantial safety risk. At all times relevant, the Defendants were not only on site at the facility, but they were well aware that the units in question were severely understaffed and contained personnel who were not properly trained. These Defendants were also well aware of the fact that hundreds of extremely dangerous inmates had recently been transferred into the Lee facility (Unit F1, F3, F5).   Additionally, these Defendants were well aware that that many doors within these units would not lock and that a large percentage of these inmates had weapons in their possession. They were further very much aware that the above-mentioned conditions created a highly dangerous situation for all inmates located in that area to include the decedent. Even though they had the opportunity and obligation, they consciously failed to take any steps to ensure the decedent's safety.

**FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(SURVIVAL)**

30.     Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

31.     The Defendants were acting under the color or pretense of State law, customs, practices, usage, and/or policy at all times mentioned herein as correctional officers and/or supervisors of the Lee Correctional Institution and had certain duties imposed upon them with regard to Raymond Scott. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to medical care and his right to be free from cruel and unusual punishment.  Defendants failed to act despite knowledge of a substantial risk of serious harm.

32.     The Defendants were consciously and deliberately indifferent to the decedent and acted in an egregious and arbitrary manner during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously ignoring obvious and known dangers to inmates and, specifically, failing to take reasonable measures to take corrective action regarding the known substantial risk of serious harm;

(c)     in entering into a pattern and practice of failing to provide appropriate medical care and allowing extremely dangerous conditions;

(d)     in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)     in consciously failing to sufficiently screen, classify and/or monitor inmates in their care to determine the severity of the inmate's condition and any threat posed to others;

(f)     in knowingly, deliberately and consciously denying appropriate care and safety to the decedent;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j)     in consciously and deliberately allowing dangerous overcrowding at the Lee Correctional Institution;

(k)     in consciously and deliberately allowing shanks, weapons and other contraband throughout the facility and specifically the F5 Unit;

(l)     in consciously and deliberately allowing the unit doors and cell doors to remain broken so they would not lock;

(m)    in consciously and deliberately failing to protect the decedent when they knew a hit had been placed on his life by other inmates or staff;

(n)    in consciously failing to have the proper security checks performed to determine inmate safety;

(o)    in consciously failing to take the appropriate steps to or provide medical care and/or ensure the safety of the decedent when they had actual and constructive notice of a life-threatening situation;

(p)    in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care and safety;

(q)    if said procedures do exist, in consciously failing to follow same;

(r)    in abandoning the decedent when he was in desperate need for medical care;

(s)    in consciously and deliberately failing to provide the appropriate number of correctional staff at the various locations in Lee Correctional Institution (to include the F5 Unit);

(t)    in consciously and deliberately failing to provide adequate and appropriate security officers at the Lee Correctional Institution including the F5 Unit;

(u)    in consciously and deliberately failing to properly monitor the inmates (mainly the decedent) at the Lee Correctional Institution including the F5 Unit;

(v)    in consciously and deliberately failing to protect the decedent from a violent assault and death;

(w)    in consciously and deliberately failing to properly supervise the employees so as to ensure the safety of the inmates located at the Lee Correctional Institution;

(x)     in consciously and deliberately failing to protect the decedent from a known risk of serious harm;

(y)     in consciously and deliberately failing to provide any level of security in the F5 Unit of the Lee Correctional Institution after allowing numerous known violent inmates to move about at large;

(z)     in consciously and deliberately failing to abate a clearly dangerous situation after multiple events providing notice;

(aa)    in consciously and deliberately failing to take any action to prevent inmates from becoming severely injured after multiple events providing notice of danger;

(bb)    in consciously and deliberately failing to properly investigate violent incidents which occurred at the Lee Correctional Institution;

(cc)    in consciously and deliberately failing to adhere to the policies and procedures of SCDC;

(dd)    in being consciously and deliberately indifferent to the decedent's health and safety; and

(ee)    in being consciously and deliberately indifferent to the decedent's health and safety after having knowledge of the dangerous condition and failing to take reasonable measures to prevent it from occurring.

33.     As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly, severally, and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution. Additionally, as a direct result of the above, the decedent suffered needlessly and ultimately died.

34.    As a result, the decedent suffered conscious pain, mental and physical suffering, indignity, and loss of his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent, loss of his love and support, mental anguish, emotions distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(4TH & 8TH AMENDMENT – FAILURE TO PROVIDE MEDICAL CARE – CRUEL AND UNUSUAL PUNISHMENT)**
**(WRONGFUL DEATH)**

35.    Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

36.    The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage, or policy at all times mentioned herein, as correctional officers and/or supervisors of the Lee Correctional Institution and had certain duties imposed upon them with regard to Raymond Scott. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights, including his right to be free from cruel and unusual punishment.  Defendants failed to act despite knowledge of a substantial risk of serious harm.

37.    The Defendants were consciously and deliberately indifferent to the decedent and acted in an egregious and arbitrary manner during the time period mentioned in the facts in the following particulars:

(a)    in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so.

16

Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously ignoring obvious and known dangers to inmates and, specifically, failing to take reasonable measures to take corrective action regarding the known substantial risk of serious harm;

(c)     in entering into a pattern and practice of failing to provide appropriate medical care and allowing extremely dangerous conditions;

(d)     in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)     in consciously failing to sufficiently screen, classify and/or monitor inmates in their care to determine the severity of the inmate's condition and any threat posed to others;

(f)     in knowingly, deliberately and consciously denying appropriate care and safety to the decedent;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i)    in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j)    in consciously and deliberately allowing dangerous overcrowding at the Lee Correctional Institution;

(k)    in consciously and deliberately allowing shanks, weapons and other contraband throughout the facility and specifically the F5 Unit;

(l)    in consciously and deliberately allowing the unit doors and cell doors to remain broken so they would not lock;

(m)    in consciously and deliberately failing to protect the decedent when they knew a hit had been placed on his life by other inmates or staff;

(n)    in consciously failing to have the proper security checks performed to determine inmate safety;

(o)    in consciously failing to take the appropriate steps to or provide medical care and/or ensure the safety of the decedent when they had actual and constructive notice of a life-threatening situation;

(p)    in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care and safety;

(q)    if said procedures do exist, in consciously failing to follow same;

(r)    in abandoning the decedent when he was in desperate need for medical care;

(s)    in consciously and deliberately failing to provide the appropriate number of correctional staff at the various locations in Lee Correctional Institution (to include the F5 Unit);

(t)     in consciously and deliberately failing to provide adequate and appropriate security officers at the Lee Correctional Institution including the F5 Unit;

(u)     in consciously and deliberately failing to properly monitor the inmates (mainly the decedent) at the Lee Correctional Institution including the F5 Unit;

(v)     in consciously and deliberately failing to protect the decedent from a violent assault and death;

(w)     in consciously and deliberately failing to properly supervise the employees so as to ensure the safety of the inmates located at the Lee Correctional Institution;

(x)     in consciously and deliberately failing to protect the decedent from a known risk of serious harm;

(y)     in consciously and deliberately failing to provide any level of security in the F5 Unit of the Lee Correctional Institution after allowing numerous known violent inmates to move about at large;

(z)     in consciously and deliberately failing to abate a clearly dangerous situation after multiple events providing notice;

(aa)    in consciously and deliberately failing to take any action to prevent inmates from becoming severely injured after multiple events providing notice of danger;

(bb)    in consciously and deliberately failing to properly investigate violent incidents which occurred at the Lee Correctional Institution;

(cc)    in consciously and deliberately failing to adhere to the policies and procedures of SCDC;

(dd)    in being consciously and deliberately indifferent to the decedent's health and safety; and

(ee)     in being consciously and deliberately indifferent to the decedent's health and

safety after having knowledge of the dangerous condition and failing to take

reasonable measures to prevent it from occurring;

38.     As a direct and proximate result of the Defendants' acts of willful, malicious,

conscious and deliberate indifference, jointly, severally and in combination thereof, the decedent

suffered deprivations of his rights secured by the Fourth, Eighth, and Fourteenth Amendments to

the United States Constitution.

39.     The Defendants jointly, severally and in combination thereof, wrongfully caused

the death of Raymond Angelo Scott by their acts and omissions as described above.

40.     As a direct and proximate result of the omissions, willful and wanton conduct of

the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)     loss of financial economic support and contribution of the deceased;

(b)     extreme mental shock and suffering;

(c)     extreme wounded feelings;

(d)     tremendous grief and sorrow;

(e)     loss of friendship and companionship; and

(f)     deprivation of the use and comfort of the deceased's society, knowledge and

judgment and experience.

41.     The Plaintiff is informed and believes that the Estate of Raymond Angelo Scott is

entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants,

pursuant to the violation of her Federal Civil Rights 42 USC 1983 – Wrongful Death.

42.     As a result, the decedent suffered conscious pain, suffering, indignity, and loss of

his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent,

loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

**FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(SURVIVAL)**

43.    Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

44.    The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Lee Correctional Institution and had certain duties imposed upon them with regard to Raymond Scott. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

45.    The Defendants were consciously and deliberately indifferent to the decedent and acted in an egregious and arbitrary manner during the time period mentioned in the facts in the following particulars:

(a)    in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)   in consciously ignoring obvious and known dangers to inmates and, specifically, failing to take reasonable measures to take corrective action regarding the known substantial risk of serious harm;

(c)   in entering into a pattern and practice of failing to provide appropriate medical care and allowing extremely dangerous conditions;

(d)   in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)   in consciously failing to sufficiently screen, classify and/or monitor inmates in their care to determine the severity of the inmate's condition and any threat posed to others;

(f)   in knowingly, deliberately and consciously denying appropriate care and safety to the decedent;

(g)   in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)   in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

(i)   in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j)   in consciously and deliberately allowing dangerous overcrowding at the Lee Correctional Institution;

22

(k)     in consciously and deliberately allowing shanks, weapons and other contraband throughout the facility and specifically the F5 Unit;

(l)     in consciously and deliberately allowing the unit doors and cell doors to remain broken so they would not lock;

(m)     in consciously and deliberately failing to protect the decedent when they knew a hit had been placed on his life by other inmates or staff;

(n)     in consciously failing to have the proper security checks performed to determine inmate safety;

(o)     in consciously failing to take the appropriate steps to or provide medical care and/or ensure the safety of the decedent when they had actual and constructive notice of a life-threatening situation;

(p)     in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care and safety;

(q)     if said procedures do exist, in consciously failing to follow same;

(r)     in abandoning the decedent when he was in desperate need for medical care;

(s)     in consciously and deliberately failing to provide the appropriate number of correctional staff at the various locations in Lee Correctional Institution (to include the F5 Unit);

(t)     in consciously and deliberately failing to provide adequate and appropriate security officers at the Lee Correctional Institution including the F5 Unit;

(u)     in consciously and deliberately failing to properly monitor the inmates (mainly the decedent) at the Lee Correctional Institution including the F5 Unit;

(v)    in consciously and deliberately failing to protect the decedent from a violent

assault and death;

(w)    in consciously and deliberately failing to properly supervise the employees so as

to ensure the safety of the inmates located at the Lee Correctional Institution;

(x)    in consciously and deliberately failing to protect the decedent from a known risk

of serious harm;

(y)    in consciously and deliberately failing to provide any level of security in the F5

Unit of the Lee Correctional Institution after allowing numerous known violent

inmates to move about at large;

(z)    in consciously and deliberately failing to abate a clearly dangerous situation after

multiple events providing notice;

(aa)    in consciously and deliberately failing to take any action to prevent inmates from

becoming severely injured after multiple events providing notice of danger;

(bb)    in consciously and deliberately failing to properly investigate violent incidents

which occurred at the Lee Correctional Institution;

(cc)    in consciously and deliberately failing to adhere to the policies and procedures of

SCDC;

(dd)    in being consciously and deliberately indifferent to the decedent's health and

safety; and

(ee)    in being consciously and deliberately indifferent to the decedent's health and

safety after having knowledge of the dangerous condition and failing to take

reasonable measures to prevent it from occurring;

46.    As a direct and proximate result of the Defendants' acts of willful, malicious, conscious and deliberate indifference, jointly and severally and in combination thereof, the decedent suffered deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the <u>United States Constitution</u>.

47.    As a result, the decedent suffered conscious pain, suffering, indignity, and loss of his life. The Plaintiff, who has suffered the loss of the life of the decedent, loss of support, mental anguish, loss of quality of life, emotional distress, incurred funeral expenses, attorney fees, and undue grief and will likely suffer from the effects of the Defendants' actions now and in the future, demand damages from the Defendants, jointly and severally for ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES.

**FOR A FOURTH CAUSE OF ACTION**
**VIOLATION OF FEDERAL CIVIL RIGHTS 42 U.S.C. § 1983**
**(VIOLATION OF DUE PROCESS – 14TH AMENDMENT)**
**(WRONGFUL DEATH)**

48.    Each and every allegation of fact contained in the above stated paragraphs are re-alleged herein, as if re-stated verbatim.

49.    The Defendants were acting under the color or pretense of South Carolina law, customs, practices, usage or policy at all times mentioned herein as correctional officers and/or supervisors of the Lee Correctional Institution and had certain duties imposed upon them with regard to Raymond Scott. Additionally, during the time period in question, the Defendants were well aware of the decedent's constitutional rights including his right to due process.

50.    The Defendants were consciously and deliberately indifferent to the decedent and acted in an egregious and arbitrary manner during the time period mentioned in the facts in the following particulars:

(a)     in consciously failing to provide reasonable, necessary and appropriate medical care to the decedent when they had the opportunity and obligation to do so. Further, in failing to provide reasonable, necessary and appropriate medical care to the decedent – who had a serious medical condition which was open and obvious to those Defendants who had contact with him;

(b)     in consciously ignoring obvious and known dangers to inmates and, specifically, failing to take reasonable measures to take corrective action regarding the known substantial risk of serious harm;

(c)     in entering into a pattern and practice of failing to provide appropriate medical care and allowing extremely dangerous conditions;

(d)     in entering into a pattern and practice of administering cruel and unusual punishment without due process;

(e)     in consciously failing to sufficiently screen, classify and/or monitor inmates in their care to determine the severity of the inmate's condition and any threat posed to others;

(f)     in knowingly, deliberately and consciously denying appropriate care and safety to the decedent;

(g)     in engaging in a pattern and practice of consciously failing to provide reasonable and necessary medical care and/or treatment to inmates/detainees in their custody including the decedent – causing them to needlessly suffer and/or die;

(h)     in consciously failing to properly care for the decedent, when the Defendants and/or their personnel, agents and/or employees knew or should have known that the decedent was in dire need of either medical assistance and/or treatment;

26

(i)     in consciously failing to monitor the decedent while incarcerated and take steps to provide medical assistance to him when they knew or should have known that he was in such a state that he was unable to care for himself;

(j)     in consciously and deliberately allowing dangerous overcrowding at the Lee Correctional Institution;

(k)     in consciously and deliberately allowing shanks, weapons and other contraband throughout the facility and specifically the F5 Unit;

(l)     in consciously and deliberately allowing the unit doors and cell doors to remain broken so they would not lock;

(m)     in consciously and deliberately failing to protect the decedent when they knew a hit had been placed on his life by other inmates or staff;

(n)     in consciously failing to have the proper security checks performed to determine inmate safety;

(o)     in consciously failing to take the appropriate steps to or provide medical care and/or ensure the safety of the decedent when they had actual and constructive notice of a life-threatening situation;

(p)     in consciously failing to have the proper policy and procedures necessary to ensure that inmates are provided basic and/or appropriate medical care and safety;

(q)     if said procedures do exist, in consciously failing to follow same;

(r)     in abandoning the decedent when he was in desperate need for medical care;

(s)     in consciously and deliberately failing to provide the appropriate number of correctional staff at the various locations in Lee Correctional Institution (to include the F5 Unit);

(t)     in consciously and deliberately failing to provide adequate and appropriate security officers at the Lee Correctional Institution including the F5 Unit;

(u)     in consciously and deliberately failing to properly monitor the inmates (mainly the decedent) at the Lee Correctional Institution including the F5 Unit;

(v)     in consciously and deliberately failing to protect the decedent from a violent assault and death;

(w)     in consciously and deliberately failing to properly supervise the employees so as to ensure the safety of the inmates located at the Lee Correctional Institution;

(x)     in consciously and deliberately failing to protect the decedent from a known risk of serious harm;

(y)     in consciously and deliberately failing to provide any level of security in the F5 Unit of the Lee Correctional Institution after allowing numerous known violent inmates to move about at large;

(z)     in consciously and deliberately failing to abate a clearly dangerous situation after multiple events providing notice;

(aa)    in consciously and deliberately failing to take any action to prevent inmates from becoming severely injured after multiple events providing notice of danger;

(bb)    in consciously and deliberately failing to properly investigate violent incidents which occurred at the Lee Correctional Institution;

(cc)    in consciously and deliberately failing to adhere to the policies and procedures of SCDC;

(dd)    in being consciously and deliberately indifferent to the decedent's health and safety; and

(ee)  in being consciously and deliberately indifferent to the decedent's health and

safety after having knowledge of the dangerous condition and failing to take

reasonable measures to prevent it from occurring;

51.     As a direct and proximate result of the Defendants' acts of willful, malicious and

deliberate indifference, jointly and severally and in combination thereof, the decedent suffered

deprivations of his rights secured by the Fourth, Eighth and Fourteenth Amendments to the

United States Constitution.

52.     The Defendants, jointly, severally and in combination thereof, wrongfully caused

the death of Raymond Scott by their acts and omissions as described above.

53.     As a direct and proximate result of the omissions, willful and wanton conduct of

the Defendants, the Plaintiff has been damaged and suffered as follows:

(a)  loss of financial economic support and contribution of the deceased;

(b)  extreme mental shock and suffering;

(c)  extreme wounded feelings;

(d)  tremendous grief and sorrow;

(e)  loss of friendship and companionship; and

(f)  deprivation of the use and comfort of the deceased's society, knowledge and

judgment and experience.

54.     The Plaintiff is informed and believes that the Estate of Raymond Angelo Scott is

entitled to ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES against the Defendants,

pursuant to the violation of their Federal Civil Rights 42 USC 1983 – Wrongful Death.

55.     As a result, the decedent suffered conscious pain, suffering, indignity, and loss of

his aforementioned federal rights. The Plaintiff has suffered the loss of the life of the decedent,

loss of his love and support, mental anguish, emotional distress, incurred funeral expenses, attorney fees, and undue grief, and will likely suffer from the effects of the Defendants' actions now and in the future, and Plaintiff demands ACTUAL, CONSEQUENTIAL, and PUNITIVE DAMAGES from the Defendants.

WHEREFORE, the Plaintiff prays for judgment against the Defendants, both jointly, severely and in combination thereof, for ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs and reasonable attorney fees. The Plaintiff demands a trial by jury as provided for in the Seventh Amendment to the Constitution of the United States of America.

_s/ C. Carter Elliott, Jr._____
C. Carter Elliott, Jr.
U.S.D.C. Bar #: 5423
Andrew W. Kunz
U.S.D.C. Bar #: 11198
Elliott & Phelan, LLC
17 ½ Screven Street
P.O. Box 1405
Georgetown, SC  29442
(843) 546-0650 (phone)
(843) 546-1920 (fax)
July 23, 2019                                    carter@elliottphelanlaw.com
Georgetown, South Carolina

Justin T. Bamberg
U.S.D.C Bar #: 11363
Bamberg Legal, LLC
104 Bridge St.
Bamberg, SC 29003

J. Todd Rutherford
U.S.D.C. Bar #: 7126
Rutherford Law Firm, LLC
2113 Park St.
Columbia, SC 29201
ATTORNEYS FOR THE PLAINTIFF